UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:14-CR-00104-7-JRG |
| | ) | |
| LARRY THOMAS WILLIAMS | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Larry Thomas Williams' Motion for Immediate Compassionate Release [Doc. 410] and the United States' Response [Doc. 413]. For the reasons herein, the Court will deny Mr. Williams' motion.

### I. BACKGROUND

In 2015, Mr. Williams pleaded guilty to conspiring to distribute and possess with the intent to distribute at least fifty kilograms but less than a hundred kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846. [Plea Agreement, Doc. 166; Minute Entry, Doc. 173; Am. Plea Agreement, Doc. 184]. The Court sentenced Mr. Williams, a career offender under USSG § 4B1.1(b), to 140 months' imprisonment and six years' supervised release. [PSR, Doc. 224, ¶ 28; J., Doc. 312, at 2–3]. Acting pro se, he now moves the Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 pandemic, citing underlying medical conditions including high cholesterol, high blood pressure, and diabetes. [Def.'s Mot. at 1]. In response, the United States opposes Mr. Williams' motion, arguing that his release would be inconsistent with USSG § 1B1.13 and 18 U.S.C. § 3553(a). [United States' Resp. at 1]. Having carefully reviewed the parties' arguments, the Court is now prepared to rule on Mr. Williams' motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts his administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]

§ 3582(c)(1)(A). The United States concedes that "[t]he Court has authority to consider [Mr. Williams'] motion because he submitted a request for compassionate release to the Bureau of Prisons over 30 days ago." [United States' Resp. at 1].

Under § 3582(c)(1)(A), the Court's task is to determine whether (1) "extraordinary and compelling reasons" warrant a reduction and whether (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A)(i). "[C]ourts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085,

2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). The Application Notes to § 1B1.13 state that, when a defendant suffers from a medical condition, extraordinary and compelling reasons exist in two scenarios: the medical condition (1) is a terminal illness or (2) "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 n.1(A)(i)–(ii).

In considering whether Mr. Williams' underlying conditions, against the backdrop of the COVID-19 pandemic, "substantially diminish[] [his] ability" to "provide self-care within" the prison's walls and leave him without an expectation of recovery, USSG § 1B1.13 n.1(A)(ii), the Court turns to the Center of Disease Control's guidelines, *see, e.g.*, *Cameron v. Bouchard*, ___ F. Supp. 3d ___, 2020 WL 2569868, at *4–5 (E.D. Mich. May 21, 2020), *vacated on other grounds*, ___ F. App'x ___, 2020 WL 3867393 (6th Cir. 2020); *Awshana v. Adduccl*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from COVID-19":

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)
- Severe Obesity (BMI ≥ 40 kg/m$^2$)
- Sickle cell disease

3

- Smoking
- Type 2 diabetes mellitus

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020). The United States concedes that at least one of Mr. Williams' medical conditions constitutes an extraordinary and compelling reason for his release under § 1B1.13. [United States' Resp. at 8].

But the fact that Mr. Williams is an at-risk individual under the CDC's guidelines does not, in and of itself, entitle him to compassionate release. Before ordering compassionate release, the Court also has to determine that (1) he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," (2) a reduced sentence is consistent with §3553(a)'s factors, to the extent they are applicable, and (3) a reduced sentence is otherwise consistent with USSG § 1B1.13's policy statements. USSG § 1B1.13(2)–(3); *see* § 3582(c)(1)(A) (providing that "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "the factors set forth in section 3553(a) to the extent that they are applicable"); *United States v. Resnick*, 451 F. Supp. 3d 262, 265 (S.D.N.Y. 2020) ("The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(l)(A) and Section 1B1.13 of the United States Sentencing Guidelines.").

### A. Danger to the Safety of Others or the Community

Section 3142(g) contains the factors that courts must consider in determining whether a defendant should be detained pending trial, and it states:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the

4

person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Having considered § 3142(g)'s factors and refamiliarized itself with Mr. Williams' presentence investigation report, the Court is of the conviction that Mr. Williams would be a danger to the community if it were to order his release under § 3582(c)(1)(A). As for the nature and circumstances of Mr. Williams' offense and the weight of the evidence against him, Mr. Williams admittedly conspired to distribute large quantities of marijuana throughout the Eastern District of Tennessee and the Western District of Virginia, over the course of many years. [Plea Agreement at 2–6; PSR ¶¶ 9–16].[1] At sentencing, Mr. Williams qualified as a career offender

---

[1] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4

5

under USSG § 4B1.1, and his criminal history category was VI, the highest possible category. [PSR ¶ 46; Statement of Reasons, Doc. 313, at 1]. Because of Mr. Williams' long-standing status as a drug dealer in East Tennessee, and elsewhere, the Court is unable to conclude that he would not present a danger to the community if it were to order his release. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." (citations omitted)); *United States v. McIver*, No. 5:17-069-DCR, 2020 WL 3964714, at *4 (E.D. Ky. July 13, 2020) ("[A] sentence reduction is not warranted because [the defendant] presents a real and continuing danger to the community. He has a long history of committing controlled substance offenses and he qualified as a career offender under U.S.S.G. § 4B1.1 at sentencing." (citations omitted)). Mr. Williams therefore fails to show that § 3142(g)'s factors entitle him to release under § 3582(c)(1)(A).

### B. Section 3553(a)'s Factors

Because the Court is not satisfied that Mr. Williams would not pose a danger to the community if it were to order his release, it has no need to engage in a lengthy discussion of § 3553(a)'s factors.[2] Also, because the Court "considered the relevant factors in some depth at the original sentencing," it is under no obligation to readdress all of those factors now. *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010); *see United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (recognizing that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because

---

n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

[2] These factors include the "nature and circumstances of the offense"; the "history and characteristics of the defendant"; the "need for the sentence imposed" to "reflect the seriousness of the offense," to "promote respect for the law," and "to provide just punishment for the offense"; the "sentencing range established" for the defendant's offense; and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(1)–(2), (4), (6).

6

"§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *id.* at 330–31)).

Mr. Williams' offense—a conspiracy to distribute and possess with the intent to distribute at least fifty kilograms of marijuana, in violation of §§ 841(a)(1), (b)(1)(C) and 846—is serious in nature. *See Stone*, 608 F.3d at 947 n.6 (referring to drug trafficking as "a serious offense"); *see also United States v. Martinez*, 47 F. Supp. 2d 906, 912 (M.D. Tenn. 1999) (determining that possession with the intent to distribute marijuana and conspiracy to distribute and possess with the intent to distribute marijuana are serious offenses even though they did not involve firearms). To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, "courts have generally granted compassionate release only to defendants who have served a significant portion of their sentences." *United States v. Kincaid*, No. 3:10-CR-00160-1-TAV-HBG, at 13 (E.D. Tenn. Oct. 29, 2019) (citations omitted) (PACER), *aff'd*, 802 F. App'x 187 (6th Cir. 2020).

Mr. Williams has served roughly 70 months of his 140-month sentence, and his release would therefore result in a substantial reduction in his sentence. *See Kincaid*, 802 F. App'x at 188 (stating that "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate"). A substantial reduction in his sentence simply would not reflect the seriousness of his offense, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. § 3553(a)(2). If the Court were to grant a substantial reduction in his sentence by ordering his release, it would risk creating "unwarranted sentence disparities

7

among defendants with similar records who have been found guilty of similar conduct."
§ 3553(a)(6). Section 3553(a)'s factors therefore do not weigh in favor of Mr. Williams' release.

### C. FCI Beckley

Lastly, the Court would be remiss if it did not mention that a prisoner's compassionate release is an extraordinary and rare occurrence, *see United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (observing that "[c]ompassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)), and the general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify it, *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)); *United States v. Eberhart*, ___ F. Supp. 3d ___, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

COVID-19 has not affected FCI Beckley, the institution where Mr. Williams is serving his sentence, to the same degree as other federal facilities throughout the country. The Federal Bureau of Prisons ("BOP") reports only five active cases among the inmates and no active cases among the staff at FCI Beckley. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Oct. 20, 2020). And, importantly, Mr. Williams does not claim that he has been exposed to COVID-19 or that the BOP has failed to take swift, appropriate, and

effective measures to quarantine the infected inmates. Under these circumstances, Mr. Williams is not entitled to compassionate release. *Cf. United States v. You*, No. 20- 5390, at 2 (6th Cir. Apr. 22, 2020) (PACER) (noting the scarcity of "COVID-19 cases at [the defendant's] present facility" and observing that "her facility has implemented precautionary measures to protect those detained in the facility"); *see Raia*, 954 F.3d at 597 (referring to the BOP's "extensive and professional efforts to curtail the virus's spread" (citation omitted)); *United States v. Elebesunu,* No. GJH-13-008, 2020 WL 3791978, at *2 (D. Md. July 7, 2020) ("Under circumstances such as these where the number of cases at the facility is low and BOP appears to have controlled the spread, the imminence of the risk to [the defendant] is diminished and weighs against granting compassionate release." (citation omitted)); *United States v. Arafat*, No. 12-cr-45, 2020 WL 3790727, at *6 (D. Minn. July 7, 2020) ("[E]ven assuming [the defendant's] underlying medical conditions exist, [he] has failed to demonstrate a particularized risk of contracting the disease. To date, FCI-Sandstone has only one reported case of COVID- 19." (citation omitted)).

### III.  CONCLUSION

In sum, the Court sympathizes with Mr. Williams' concerns, but he is not entitled to compassionate release under § 3582(c)(1)(A) because USSG § 1B1.13 and § 3553(a)'s factors militate against his release. His Motion for Immediate Compassionate Release [Doc. 410] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
